UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LARRY M. SHULMAN
and ROBERTA S. SHULMAN,      )
    Plaintiffs,               )
                             )
    v.                        )        Case No. 5:22-cv-00078
                             )
CONCORD GENERAL MUTUAL INSURANCE  )
COMPANY and FINN AND STONE, INC.,  )
    Defendants.               )

**OPINION AND ORDER**
(Doc. 139; Doc. 142; Doc. 143)

Plaintiffs Larry M. Shulman and Roberta S. Shulman ("Plaintiffs" or "the Shulmans") bring this action against Concord General Mutual Insurance Company ("Concord") and Finn and Stone, Inc. ("Finn & Stone"), the insurance agency through whom they purchased homeowners insurance, to recover additional insurance payments from Concord and damages from Finn & Stone following a catastrophic home fire. (Doc. 80 at 7, ¶¶ 30–33.) Plaintiffs asserts five causes of action against Defendants: (1) Breach of the Unreformed Contract (Count I) against Concord; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II) against Concord; (3) Reformation of Contract (Count III) against Concord; (4) Breach of the Reformed Contract (Count IV) against Concord; and (5) Negligence (Count V) against Finn & Stone. (*Id.* at 20–27.)

All three parties have filed competing motions for summary judgment. Finn & Stone filed a motion for summary judgment with respect to Count V (Doc. 139); Plaintiffs filed a motion for partial summary judgment with respect to Counts I, II, and V (Doc. 142); and Concord filed a motion for summary judgment with respect to Counts I, II, III, and IV. (Doc. 143.)

**Factual Background**

I.     **Statement of Undisputed Facts[1]**

In 2010, the Shulmans obtained homeowners insurance from Concord for a home in Ludlow, Vermont (the "Ludlow House") with the assistance of Finn & Stone. (Doc. 148-1 at 1, ¶ 1; Doc. 150-1 at 2–3, ¶ 8; Doc. 151-1 at 4, ¶ 8.) The initial policy year for the Ludlow House, which was 2010–2011, had a Coverage A limit of $569,000. (Doc. 149-1 at 2, ¶ 4.) The Shulmans made several renovations and additions between 2015and 2018, and Finn & Stone increased the coverage after each expansion or renovation. (Doc. 150-1 at 2–3, ¶¶ 4, 5, 10; Doc. 151-1 at 2–4, ¶¶ 4, 5, 10.)

In March 2018, the Shulmans informed Finn & Stone they planned to build another addition to the Ludlow House. (Doc. 149-1 at 4, ¶ 8.) This addition significantly expanded the Ludlow House. (Doc. 150-1 at 2, ¶ 5; Doc. 151-1 at 2, ¶ 5.)

In October 2018, Concord retained JMI to inspect the Ludlow House, which occurred on November 7, 2018, while construction of the 2018 addition was still in progress. (Doc. 151-1 at 7, ¶¶ 24-25) Concord had this inspection done for its own benefit, because Finn & Stone had increased the coverage limit to $1.9 million and Concord had not received an accurate replacement cost estimator ("RCE"). (Doc. 148-1 at 2–3, ¶¶ 4–5.). At the time of inspection, approximately twenty percent of the addition had been completed. (Doc. 150-1 at 11, ¶ 37; Doc. 151-1 at 10, ¶ 37.) JMI estimated that the Replacement Cost of the Ludlow House was $2,948,034. (Doc 149-1 at 7, ¶ 14.) A notation in the Inspector Comments section of JMI's report included the following statement: "[i]nformation for the interior finishes is estimated at this time, the dwelling may require

---

[1] Certain facts in this section are undisputed for purposes of summary judgment only. *See* Fed. R. Civ. P. 56(c)(1).

a follow up inspection upon completion to verify final finishes." (*Id.* at 7, ¶ 15 (alteration in original).)

On December 5, 2018, Concord emailed the JMI report to Jennifer Makepeace of Finn & Stone and requested, "[p]lease take a look and let me know if you agree or disagree with the $2,948,034 figure and provide your RCE so I can review by 12/19/18." (Doc. 149-1 at 7, ¶ 16.) Ms. Makepeace forwarded Mr. Shulman the JMI report and asked Mr. Shulman to "review the inspection and let me know if you agree or disagree with the Replacement Cost figure." (*Id.*) Mr. Shulman did not respond to the JMI report, nor did he sign the acknowledgement accompanying the report. (*Id.* at 8, ¶ 17.) Despite receiving no response from Mr. Shulman or Finn & Stone, Concord increased the Coverage A limit of the Ludlow House to $2,948,034 on February 15, 2019, the exact number in the JMI Report. (*Id.* at 8–9, ¶ 18; Doc. 151-1 at 16–17, ¶¶ 60–61.))

On April 2, 2019, Mr. Shulman left a voicemail with Finn & Stone stating, "I want to make sure that we're fully covered . . . ." (Doc. 149-1 at 9, ¶ 19.) On that same day, an employee from Finn & Stone emailed Mr. Shulman and wrote she was attaching the declarations page for the Concord homeowners policy and stated, "[t]he dwelling coverage is currently [at] $2,948,034." (*Id.* at 9, ¶ 20.) It is unclear from the record whether Mr. Shulman left the voicemail before or after Finn & Stone's employee sent the email. (*See* Doc. 160 at 9–11, 9:5–11:6.)

Finn & Stone and Concord were informed that construction of the new addition was substantially complete in September 2019. (Doc. 150-1 at 15, ¶ 58; Doc. 151-1 at 16, ¶ 58.) Concord did not order or request JMI to reinspect the Ludlow House after September 2019, because, according to Concord, the JMI Report represented an estimate of the completed construction of the Ludlow House. (Doc. 151-1 at 16, ¶ 59.)

Each time the policy was renewed, beginning in 2016, the limit for Coverage A was increased until 2021 when the $3 million cap was reached.[2] (Doc. 150-1 at 10, ¶ 33; Doc. 151-1 at 9, ¶ 33.) From that time forward, the policy limit remained at $3 million, which was Concord's underwriting cap. (Doc. 150-1 at 9, ¶ 30; Doc. 151-1 at 8, ¶ 30.) For the policy year running from February 15, 2020 to February 15, 2021, the coverage was increased to $3 million, subject to an additional twenty-five percent rider for replacement value above the stated limit. (Doc. 149-1 at 10, ¶ 22; Doc. 150-1 at 4, ¶ 14; Doc. 151-1 at 5, ¶ 14.) The homeowners policy was renewed at $3 million for the policy year from February 15, 2021 to February 15, 2022. (Doc. 149-1 at 10, ¶ 23; Doc. 151-1 at 9, ¶ 32.) Concord asserts it has an absolute $3 million underwriting cap for Coverage A. (Doc. 151-1 at 8, ¶ 30.)

On June 16, 2021, Mr. Shulman emailed Finn & Stone about getting additional insurance coverage for a new tractor he planned to purchase for the Ludlow House, indicating "[w]e do not have that much on our internal home furnishing in a 3 mill house." (Doc. 149-1 at 11, ¶ 25.) The next day, on June 17, 2021, after construction on the additions had been completed, a catastrophic fire completely destroyed the Ludlow House. (*Id.* at 11, ¶ 26; Doc. 148-1 at 16–17, ¶ 36.)

On July 26, 2021, Concord advised Finn & Stone that it would not be renewing the policy on the Ludlow House because "[t]he policy no longer meets our underwriting criteria due to the dwelling coverage limit." (Doc. 151-1, ¶ 71 (alteration in original).) Concord paid Plaintiffs $3.75 million pursuant to the Coverage A section of their homeowners policy. (Doc. 148-1 at 15, ¶ 31.)

---

[2] Although Concord indicates it does not agree with this statement, it acknowledges that increases to the policy were made in 2016, 2017, 2018, 2019, and 2020. (*See* Doc. 151-1 at 9, ¶ 33.)

## II.    The Disputed Facts

The parties offer differing views as to whether Finn & Stone was an agent of Concord or a broker for the Shulmans. (Doc. 149-1 at 1–2, ¶ 2; Doc. 150-1 at 2–3, ¶¶ 8–9; Doc. 151-1 at 4, ¶¶ 8–9.) The Shulmans assert they purchased homeowners insurance for the Ludlow House through Finn & Stone acting as their insurance broker and an agent of Concord. (Doc. 148-1 at 1–2, ¶ 2.) Finn & Stone agree they are an agent for Concord but describe themselves as an insurance agent when they assisted the Shulmans in purchasing homeowners insurance. (Doc. 150-1 at 2–3, ¶¶ 8–9.) Concord disputes Finn & Stone is their agent, stating Finn & Stone is an insurance agent and independent contractor. (Doc. 151-1 at 4, ¶ 9.) As discussed further below, whether Finn & Stone is considered an insurance agent or insurance broker is not material to summary judgment. Whether Finn & Stone is an agent for Concord, however, is material to the present motions.

Additionally, the parties are in disagreement as to how the increases in coverage occurred from 2016–2018. The Shulmans agree the evidence establishes the coverage was increased but do not concede the increases were due to renovations or calculated as such. (Doc. 149-1 at 3–4, ¶ 7.) Finn & Stone contends it previously relied on the Shulmans to provide information about their additions and the various renovations prompted coverage increases. (Doc. 139-1 at 2–3, ¶¶ 5–11.)

Specifically, the parties dispute whether the Shulmans informed Finn & Stone of the anticipated completed value of the March 2018 addition. (Doc. 149-1 at 4, ¶ 8.) The Shulmans contend they never requested a specific dollar amount in coverage, but rather informed Finn & Stone that the project would be "$2 million project". (*Id.* at 4–5, ¶ 9.) Finn & Stone submitted an increase to the Coverage A limit of $1,554,257 effective July 2018, but the Shulmans argue the

5

evidence does not establish the reasoning for the increase. (*Id.* at 5–6, ¶ 10.) The coverage limit was increased again in October 2018 to $1.9 million. (*Id.* at 6, ¶ 11.)

As previously established, the 2020–2021 policy limit was increased to $3 million and then not increased for the 2021–2022 policy year. The parties do not dispute that Concord has asserted it has an absolute Coverage A underwriting cap of $3 million; however, contrary to Plaintiffs' assertion, Finn & Stone denies it was ever aware of the cap. (Doc. 150-1 at 9, ¶ 31.) The reasons underlying the policy limit was increased is material to the claims raised in this case.

Finally, the parties also disagree about the accuracy of the JMI Report. They do not agree that the interior finishes in the bathrooms and kitchen are correctly classified in the JMI Report as "custom" or "luxury" as opposed to "builder's grade" and "custom" or "luxury." (*Id.* at 11–12, ¶¶ 41–42; Doc. 151-1 at 11–12, ¶¶ 41–42.) Specifically, the Shulmans assert the bathrooms contained custom and luxury finishes while the JMI report indicates at least one bathroom was finished at builder's grade. (Doc 142-3 at 6–7, ¶¶ 41–42.) Additionally, Concord disputes the exact square footage of the Ludlow House after renovations. (Doc. 151-1 at 2–3, ¶ 5.) Finn & Stone agree the JMI Report calculated the replacement cost of the home based on the incorrect number of bathrooms, four-and-a-half instead of eight-and-a-half. (Doc. 150-1, ¶ 40.) While Concord disputes the number of bathrooms, they contend this is not material to the motions on summary judgment. (Doc. 151-1, ¶ 40.) Finn & Stone acknowledges the JMI Report did not include the timber frame construction style or the insulated panel system. (Doc. 150-1 at 12, ¶ 44.) Concord disputes this fact but claims it is not material to summary judgment. (Doc. 151-1 at 12, ¶ 44.) Based on the court's findings, these disputes are not material to summary judgment.

**Legal Standard**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39–40 (quoting *Anderson*, 477 U.S. at 248).

In ruling on summary judgment, the court "constru[es] the evidence in the light most favorable to the non-moving party" and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)). There is no genuine dispute where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation modified). "Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party 'must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor.'" *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (alteration in original) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

7

"Thus, a nonmoving party can defeat a summary judgment motion only 'by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial.'" *Id.* at 166–67 (alterations in original) (quoting *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998). If the evidence "presents a sufficient disagreement to require submission to a jury," the court should deny summary judgment. *Anderson*, 477 U.S. at 251–52.

## Conclusions of Law and Analysis

### I.    Finn & Stone (Count V)

For a negligence claim to survive summary judgment, a plaintiff must establish sufficient evidence for all four elements of negligence: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; (3) actual injury to the plaintiff; and (4) a causal link between the breach and the injury. *Driscoll v. Wright Cut & Clean, LLC*, 2024 VT 49, ¶ 7, 325 A.3d 145, 148 (Vt. 2024). The existence of a legal duty owed by the defendant to the plaintiff is a threshold question of law, as a negligence claim cannot proceed without evidence of a duty of care owed by the defendant to the plaintiff.

### A. Duty of Care Owed by Insurance Agents

The initial question has been presented as to whether Finn & Stone is an insurance broker or an insurance agent and the consequences of being defined by either term in relation to the Shulmans and Concord. "A party who negotiates an insurance contract" to procure a policy is "acting as an agent for either the insured or insurer." 3 Couch on Ins. § 45:1. The party representing the insured is known as an insurance broker. *Id.* Typically, an insurance broker first acts as an agent of the insured to procure insurance for the insured. *Id.* § 45:3; *Evvtex Co. Inc. v. Hartley Cooper Assoc., Ltd.*, 102 F.3d 1327, 1331–32 (2d Cir. 1996). When the broker agrees to obtain insurance for a client, "the broker becomes the client's agent and owes a duty to the client

8

to act with reasonable care, skill, and diligence." *See e.g.*, *Murray-Kaplan v. NEC Ins., Inc.*, 617 S.W.3d 485, 496 (Mo. Ct. App. 2021) (quoting *Emerson Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7, 12 (Mo. 2012)).

The parties argue over whether Finn & Stone should be characterized as an insurance agent or broker. The court observes that the terms "agent" and "broker" are used interchangeably in relevant case law and treatises. The parties have argued for a distinction between the two labels as to Finn & Stone. The distinction is immaterial because the parties identify the same standard of care regardless of whether Finn & Stone is labeled an insurance agent or insurance broker.

Insurance agents owe a duty to use reasonable care and diligence to procure insurance that meets the insured's stated needs and wishes. *Booska v. Hubbard Ins. Agency, Inc.*, 627 A.2d 333, 335 (Vt. 1993) (citing *Rocque v. Coop. Fire Ins. Ass'n*, 438 A.2d 383, 386 (Vt. 1981)). "Once a policy is procured as requested and is consistent with the applicable standard of care, no further duty is owed to the insured by the agent with respect to this insurance." *Id.* at 335 (citing *Roque*, 438 A.2d at 386). An insurance agent's task, in general, is to be "fair and truthful in explaining the nature of a policy," but "not to warn the insured about the impact of necessarily complex contract language on every eventuality." *Id.* Specifically, if the agent fulfills their responsibility without negligence, "the task of reading and understanding the policy text is that of the purchasers." *Id.* at 336; *see also Hill v. Grandey*, 321 A.2d 28, 34 (Vt. 1974) ("An agent may point out to [an insured] the advantages of additional coverage and may ferret out additional facts from the insured applicable to such coverage, but he is under no obligation to do so; nor is the insured under an obligation to respond.").

Plaintiffs seek to impose a heightened duty of care on Finn & Stone when they assert that Finn & Stone should have completed their own valuation of the home rather than rely on the

9

estimate from the JMI Report. (Doc. 139 at 16.) Vermont law is clear that there is no duty placed on insurance agents to conduct their own valuation of a home. The Vermont Supreme Court, in *Booska*, held agents do not have a duty to inquire about special circumstances within the insured's control that could potentially impact the degree of protection the policy offers. *Booska*, 627 A.2d at 335. The Vermont Supreme Court expressly rejected the argument that an insurance agent shall foresee the extent of renovations, determine the manner in which renovations are conducted, and determine the value of the home during renovation. *Id.* This level of care is "not the duty of a reasonable insurance agent, but that of a soothsayer." *Id.* There is no duty to appraise or reappraise.

Under Vermont law, Defendant did owe a legal duty to Plaintiffs. That duty, however, is one of reasonable care and due diligence. As such, the court next looks to whether Finn & Stone breached this duty.

### B. Breach of Duty

Summary judgment in this case turns on whether Finn & Stone breached their duty to use reasonable care, skill, and diligence in obtaining homeowners insurance for the Ludlow House. In both seeking and defending against summary judgment, the Shulmans identify a number of acts and omissions committed by Finn & Stone in procuring insurance they contend are not commensurate with a reasonable degree of care. Additionally, in moving for summary judgment, Finn & Stone argue they have satisfied their duty to the Shulmans by procuring insurance coverage based on the information and knowledge they had at the time.

### 1. Failure to Procure Insurance to Fully Cover the Ludlow House

The Shulmans allege Finn & Stone failed to meet their "needs and wishes" by not procuring an insurance policy that fully covered the Ludlow House in case of a total loss. (Doc. 142-2 at

10

14.) Further, the Shulmans contend Finn & Stone were negligent when they relied blindly on the JMI Report's valuation of the home. (*Id.*) The Shulmans also highlight Finn & Stone's failure to follow up with them after receiving no response to their email forwarding the JMI Report. (*Id.* at 16.) According to Plaintiffs, Finn & Stone's deferral to the JMI Report and lack of review of the valuation of the Ludlow House amounted to a breach of their duty.

An insurance agent's duty is to provide an insurance policy "that covers the property based on a reasonable interpretation of the information that the agency had." *Bertelson v. Sunbeam Prods., Inc.*, No. S0312-04Cnc., 2005 WL 5895225 (Vt. Super. Ct. July 7, 2005). This duty does not require the agent to investigate whether the insured's representations to the agent are correct or to appraise the property itself. *Id.*; *see also Shulman v. Concord Gen. Mut. Ins. Co.*, 618 F. Supp. 3d 165, 177 (D. Vt. 2022).

The Vermont Supreme Court held that a plaintiff's request for insurance on "all" of plaintiff's property did not require the defendant insurance agent to inquire about the existence of additional structures on the property. *See 50 Pine St. Condo. Ass'n v. Bowen Livingston, Inc.*, No. 2004-020, 2004 WL 5582108, at *2 (Vt. June 2004). In *50 Pine Street Condominium*, the plaintiff had not specifically informed the insurance agent that he sought coverage of a barn on his property. *Id.* The Vermont Supreme Court affirmed the defendant had no duty to clarify the nature of the coverage requested and the insurance agent had used both reasonable care and diligence to procure an insurance policy that met the needs and wishes of the insured as "communicated to [the agent] by the insured." *Id.* (citing *Booska*, 627 A.2d at 335).

After Concord completed its own independent appraisal through the services of JMI, Finn & Stone sent an email to Mr. Shulman containing the appraisal report which placed the value of the Ludlow House at $2,948,034 and asked Mr. Shulman to confirm whether he agreed with the

11

valuation of the home. (Doc. 149-1 at 7–8, ¶ 16; Doc. 148-1 at 6, ¶ 13.) After hearing no dissent from the Shulmans or Finn & Stone, Concord increased the coverage of the home to $2,948,034, the value listed on the JMI report. (Doc. 148-1 at 9, ¶ 20.)

Finn & Stone acted reasonably based on the information available to it, including Mr. Shulman's voicemail stating, "I want to make sure that we're fully covered." Mr. Shulman's request for "full coverage" in his voicemail to Finn & Stone lacks sufficient detail to put Finn & Stone on notice that he believed the coverage limit was insufficient or that he was requesting additional coverage. As far as Finn & Stone was aware, Plaintiffs gave no indication they were unhappy with the coverage under the policy.

While there is no evidence to suggest Finn & Stone thought the home was underinsured when the coverage was set at around $3 million, there also is no evidence of a specific request for an increase in coverage from the Shulmans. The Shulmans are the party in the best position to know the cost of the renovation. Finn & Stone had no duty to inspect or investigate whether additional coverage was needed based on the information provided to them. Given that it was reasonable for Finn & Stone not to conduct its own appraisal of the Ludlow House, and the fact that Finn & Stone were not sufficiently informed about the cost of the renovations, Finn & Stone procured the homeowners policy "as requested."

Further, Finn & Stone exercised reasonable care and diligence when they asked the Shulmans to review the JMI Report. It would be incongruous with the standard of care placed on insurance agents to expect Finn & Stone to continuously reach out to clients to double-check their approval of appraisers' estimated valuation of their homes. Having heard no objection, Finn & Stone reasonably did not question Concord's policy amount.

## 2. Failure to Inform the Shulmans about Concord's Policy Cap

Second, the Shulmans argue Finn & Stone breached its duty owed to the Shulmans when they failed to inform them that Concord had a $3 million "cap," meaning Concord had an internal policy that blocked them from writing a Coverage A policy for more than $3 million. (Doc. 142-2 at 17.) As a result of this failure to inform, the Shulmans argue they were left with inadequate coverage. (*Id.*) Finn & Stone argues that Plaintiffs have not been able to show Finn & Stone knew about Concord's $3 million policy cap. (Doc. 150-1 at 9, ¶ 31.)

While the parties dispute whether Finn & Stone was ever aware of Concord's underwriting cap, this fact is not material for summary judgment purposes. Under Vermont law, Finn & Stone has a duty to procure insurance with reasonable care and due diligence. *Booska*, 627 A.2d at 335 (quoting *Rocque*, 438 A.2d at 386). Once this duty is performed without negligence, the task of understanding the policy then falls to the insured. *Id.* Given that Finn & Stone acted reasonably in procuring the requested coverage, the fact that Finn & Stone did not notify the Shulmans about the "cap" is not relevant as there is no duty to do so.

In *Dodge v. Aetna Cas. & Sur. Co.*, 250 A.2d 742 (Vt. 1969), the Vermont Supreme Court held an insurance company was estopped from denying coverage under a procured policy because the record showed a mistake on the part of the agent. *Id.* at 744. The agent failed to amend the policy after the plaintiffs informed the agent of additional business ventures that would not be covered under the current policy. *Id.* at 743. The plaintiff, a business owner who sold gasoline and rendered automobile services, informed the defendant insurance agent that he had enlarged his business to include the sale of bottled gas and he wanted insurance coverage for all aspects of his work. *Id.* The agent believed the plaintiff's current coverage would be adequate and made no

13

changes. *Id.* The Vermont Supreme Court found the failure of the agent was a failure to ascertain whether the policy met the needs of the insured as stated by the insured. *Id.* at 744.

Here, Finn & Stone provided the insurance that the Shulmans requested. There was no obligation for Finn & Stone to inform the Shulmans of the $3 million cap. Unlike the defendant in *Dodge*, Finn & Stone procured an insurance policy the Shulmans requested and that conformed with the numbers provided in the JMI report. Despite the alleged inaccuracies in the JMI Report, the Report proffered the estimated valuation of the Ludlow Home at completion. Nothing in the record suggests that Finn & Stone knew that the Ludlow House valuation would increase over $3 million. If that were the case, Finn & Stone's duty would be different.

Plaintiffs' motion for summary judgment as to Finn & Stone is DENIED because Plaintiffs have failed to establish Finn & Stone breached a duty of care.

### 3. Finn & Stone Satisfied the Duty Owed to the Shulmans

Finn & Stone moves for summary judgment on the basis that it satisfied its duty of care to Plaintiffs in obtaining insurance coverage for the Ludlow House based on the information it had been provided. (Doc. 139 at 8–9.) Further, Finn & Stone argues there was no duty to investigate whether the coverage procured was sufficient because they believe they had been relying on reasonable information provided by Plaitniffs. (*Id.* at 12–13.)

Finn & Stone procured an insurance policy for the Shulmans. The limit on this policy was increased periodically. The 2020–2021 policy was based on the calculation in the JMI Report. Having no evidence to indicate Finn & Stone knew the JMI Report contained inaccuracies or was not approved by the Shulmans, they assisted in securing a policy which reflected that number. The undisputed facts demonstrate Finn & Stone exercised due diligence and reasonable care in obtaining the Shulmans' insurance policy.

14

Finn & Stone's motion for summary judgment is GRANTED, as Finn & Stone has shown there was no breach of in the duty to exercise due diligence and reasonable care.

## II.     Concord

Plaintiffs argue they are entitled to summary judgment as to Count I (Breach of the Unreformed Contract) and Count II (Breach of the Implied Covenant of Good Faith and Fair Dealing) against Concord. Concord argues it is entitled to summary judgment as to Counts I, II, III (Reformation of Contract), and Count IV (Breach of the Reformed Contract).

### A.  Count I – Breach of Unreformed Contract

"To state a breach of contract claim under Vermont law, Plaintiff must plead (1) the existence of a contract, (2) breach of the contract, and (3) damages." *UCB, Inc. v. Mylan Techs. Inc.*, 720 F. Supp. 3d 320, 330 (D. Vt. 2024) (quoting *Mooers v. Middlebury Coll.*, No. 2:20-cv-00144, 2021 WL 4225659, at *5 (D. Vt. Sep. 16, 2021)). There is no dispute between the parties that a contract exists. Plaintiffs argue Concord breached its contractual obligation under the policy for the following reasons: (1) they failed to order a reinspection of the Ludlow House after construction was complete; and (2) they failed to set sufficient Coverage A limits needed to rebuild the Ludlow House in the event of a total loss. (Doc. 142-2 at 18.) Concord argues they should be awarded summary judgment because the Shulmans cannot prove the essential elements of a breach of contract claim. (Doc. 143-1 at 6.) Specifically, Concord asserts there was no obligation under the contract to appraise or reappraise the replacement cost value of the Ludlow House. (*Id.* at 8–9.) Additionally, Concord contends the Shulmans accepted Concord's offer limiting the coverage to $3.75 million under their Coverage A policy. (*Id.* at 7.)

#### 1. Implied Terms

The Shulmans argue Concord had a duty to reappraise the Ludlow House because the JMI Report and valuation had been done prior to the completion of the construction. Additionally, the

Shulmans contend full coverage in the event of complete loss of property is also an implied term in the contract. The contract between Concord and the Shulmans does not contain an express term that requires Concord to order a reinspection of the Ludlow House. The contract also does not contain an express term that the contract would cover a complete rebuilding of the Ludlow House. The initial question before the court, then, is whether these are implied terms in the contract.

"[W]e interpret contracts to give effect to the parties' intent, which we presume is reflected in the contract's language when that language is clear." *In re Adelphia Bus. Sols. of Vt., Inc.*, 2004 VT 82, ¶ 7, 177 Vt. 136, 861 A.2d 1078. Courts consider an agreement as whole when examining its individual provisions, "but do not read terms into the contract unless they arise by necessary implication." *Downtown Barre Dev. v. C & S Wholesale Grocers, Inc.*, 2004 VT 47, ¶ 9, 177 Vt. 70, 857 A.2d 263 (2004) (quoting *Morrisseau v. Fayette*, 670 A.2d 820, 826 (Vt. 1995)). Further, a court "may not insert terms into an agreement by implication unless the implication arises from the language employed or is indispensable to effectuate the intention of the parties." *Id.* (citing *Caverly-Gould Co. v. Vill. of Springfield*, 76 A. 39, 41–42 (Vt. 1910)). This is to say, contracts are interpreted based on the parties' intent, which is presumed to be reflected in the plain language of the contract. *See In re Adelphia Bus. Sols. of Vt., Inc.*, 2004 VT 82, ¶ 7, 177 Vt. 136, 861 A.2d 1078.

"A contract includes not only what is expressly stated therein but also what is necessarily implied from the language used." *Lapoint v. Dumont Const. Co.*, 258 A.2d 570, 571 (Vt. 1969) (citing *Duffy v. Woodcrest Builders, Inc.*, 2 Conn. Cir. 137, 196 A.2d 606 (1963)). The parties can intend to create a duty but fail to express that duty in the written contract, therefore, creating a gap in the actual contract. *See* 6 Corbin on Contracts § 26.1 (2026). If the obligations

> can be plainly seen from all the provisions of the instrument taken together, that the obligation in question was within the contemplation of the parties when making

16

their contract, or is necessary to carry their intention into effect . . . the law will imply the obligation and enforce it.

*Duffy*, 196 A.2d at 609 (citation modified).

"In rare circumstances . . . a court may imply a covenant in order to reflect the parties' real intentions" to fill that gap. *Hughes v. Sw. Airlines Co.*, 961 F.3d 986, 989 (7th Cir. 2020). A court will only assume the "gap-filling" function when the contract shows the implied term was clearly in the parties' contemplation "but they deemed it unnecessary to express it." 6 Corbin on Contracts § 26.2 n.3 (2026).

### 2. Failure to Reinspect the Ludlow House After Construction was Complete

After JMI's initial appraisal of the Ludlow House, no reinspection occurred when construction of the home was completed. The question before the court is whether reinspection is considered a term of the contract. If reinspection was implied in the contract, Concord's failure to reinspect the house may have constituted a breach of contract if JMI's mistakes are imputed to Concord.

The duty must be found within the express terms of the contractual agreement. *See New England P'ship, Inc. v. Rutland City Sch. Dist.*, 786 A.2d 408, 417 (Vt. 2001) ("We interpret the contract according to its terms and the parties' intent as expressed in the contract language." (quoting *Suchoski v. Redshaw*, 660 A.2d 290, 292 (Vt. 1995))). Both parties agree Concord undertook the appraisal of the Ludlow House for its own benefit. (Doc. 143-1 at 10; Doc. 148-1 at 3, ¶ 6.) A reading of the policy shows there is no express obligation to appraise the Ludlow House. Therefore, the question of whether Concord had a duty to reappraise turns on whether Concord's practice of appraising homes over $1 million is an implied contractual obligation.

The Superior Court of Vermont, in *Bertelson v. Sunbeam*, held that without an "explicit agreement," the insurance agency that provided the plaintiffs an insurance policy "had no inherent

17

duty to make such an inspection or appraisal of Plaintiff's property." 2005 WL 5895225. In *Bertelson*, the agency provided the plaintiffs with an insurance policy which covered the property based on the "reasonable interpretation of the information the agency had." *Id.* Further, "[a]ny of the additional claims that [p]laintiffs make concern information that was outside the scope of what the agency knew or could have known short of an inventory or appraisal of the property, something *they were not obligated* to perform." *Id.* (emphasis added).

Despite Plaintiff's assertion that *Bertelson* is distinguishable because the insurance agent had not voluntarily undertaken an inspection prior to the litigation, the Superior Court's ruling is persuasive. Concord based the Coverage A policy on a "reasonable interpretation" of the information they had at the time—the JMI Report. Plaintiff's claims of mistakes in the Report are outside the scope of what Concord should have known.

Plaintiffs highlight Concord's internal policy that requires valuations on homes over $1 million. Internal policies will not be read into contracts. *See* 2 Couch on Ins. § 18:24 (footnotes omitted) ("[A] manual or instruction book containing extracts from the rules and regulations of the insurer is not, as a general rule, part of the contract of the insurance unless it is included therein by the use of plain, unmistakable terms, or by reference, or is otherwise accepted by the insured as part of the contract."). For the foregoing reasons, the court will not incorporate, or read, Concord's practice of valuing $1 million homes into the contract with the Plaintiffs.

Having found that reinspection is not an implied term of the contract, the court can resolve its analysis and does not need to find whether JMI's mistakes are imputed to Concord. Since the court has determined Concord did not have a contractual duty to reinspect the home, the court need not decide whether JMI acted as Concord's agent. Because Concord had no duty to reinspect, the issue of JMI's agency is immaterial to the outcome of the suit.

18

### 3. Failure to Set Sufficient Coverage to Rebuild the Ludlow House in Case of Destruction

The analysis turns to whether Concord breached the policy by failing to set sufficient coverage to rebuild the Ludlow House in the event of a total loss. Plaintiffs argue it was an implied term in the policy that the parties' agreement was to set sufficient coverage so that the Ludlow House was fully insured in the event of a total loss. (Doc. 142-2 at 22.) Plaintiffs point to a voice message Mr. Shulman left with Finn & Stone in which he requested full coverage of the home to show that Finn & Stone had knowledge of Plaintiffs' intent to fully cover their home. (*Id.*) Plaintiffs argue this knowledge is imputed to Concord because Finn & Stone was an agent of Concord. (*Id.*)

Whether Finn & Stone acted as an agent of Concord impacts whether Finn & Stone's knowledge of the Shulmans' request for "full coverage" makes "full coverage" an implied term in the contract and whether Concord breached the policy.

The parties dispute whether Finn & Stone acted as an insurance agent for Concord or as an insurance broker for the Shulmans. Plaintiffs assert that Finn & Stone acted as their insurance broker; however, they also argue Finn & Stone was an agent of Concord. (*Id.*) Concord concedes Finn & Stone was an insurance agent but was not an "agent" of Concord. (Doc. 151-1 at 4, ¶ 9.)

The distinction between an insurance broker and an insurance agent lies primarily in their roles, relationships, and duties. Insurance brokers act on behalf of the insured, while insurance agents represent the insurer. *See* 3 Couch on Ins. § 45:1. An insurance agent under Vermont law is "a person required to be licensed under the laws of this State to sell, solicit, or negotiate insurance." 8 V.S.A. § 4791(6); 8 V.S.A. § 4813a(3). Typically, insurance agents are appointed by the insurer to negotiate and solicit insurance policies on behalf of the insurer. *Segalla v. U.S.*

19

*Fire Ins. Co.*, 373 A.2d 535, 537 (Vt. 1977) (citing 8 V.S.A. § 4791(1)). Insurance agents have a fixed and permanent relationship with the insurer and owe certain duties to the insurer. *Id.*

Conversely, an insurance broker's allegiance and duties are owed to the insured rather than the insurer. *See* 3 Couch on § 45:1 (footnotes and citation omitted) ("The distinction between an agent and a broker is important because acts of an agent are imputable to the insurer, and acts of a broker are imputable to the insured."). Brokers negotiate insurance policies on behalf of the insured rather than the insurer. Under Vermont Law, brokers represent the insured in any controversies between the insured and the insurer. 8 V.S.A. § 4813c(d). In certain instances, an insurance agent can be both an agent and a broker depending on the nature of the relationship between the insured and the insurer. *See Putney Sch., Inc. v. Schaaf*, 599 A.2d 322, 326 (Vt. 1991). Courts have used the terms interchangeably; therefore "agents" and "brokers" must be "analyzed in light of the facts and circumstances of the particular case." 3 Couch on Ins. § 45:1; *see also Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs.*, 388 F. Supp. 2d 292, 302 (S.D.N.Y. 2005).

There are circumstances when a court may determine that an insurance broker is conducting business as an agent and also serving the interest of the insurer. *See e.g., Cohen v. Utica First Ins. Co.*, 436 F. Supp. 2d 517, 531 (E.D.N.Y. 2006). "In general, an insurance broker is considered the agent of the insured, not the insurance company. However, a broker will be held to have acted as the insurer's agent where there is some evidence of action on the insurer's part . . . ." *Burlington Ins. Co. v. Clearview Maint. & Servs., Inc.*, 150 A.D.3d 954, 956 (N.Y. App. Div. 2017) (citation modified). The presumption that an insurance broker acts as an agent of the insured can be overcome in special circumstances. These are recognized by the court, including "when the insurer characterizes the broker as a representative of the insurer" or the broker solicits

the insurer's products.  3 Couch on Ins. § 45:5 (citations and footnotes omitted).  Importantly, a broker "may not be converted into an agent for the insurer without some action on the part of the insurer" or evidence that "indicate[s] that the broker has the authority to represent the insurer." *Id.*

The evidence cited by Plaintiffs to establish that Finn & Stone acted, not as an independent contractor, but as an insurance agent falls short of meeting their burden of establishing an agency relationship.  Plaintiff relies on Concord's answer, Finn & Stone's response to the Shulmans' statement of undisputed facts in a separate Count, and deposition testimony from the corporate representatives of Finn & Stone and Concord to establish Finn & Stone was an agent for Concord.  Specifically, Plaintiffs highlight a statement of one of Concord's representatives that "Finn & Stone was the agent for the Shulman account," and that an "agent is a representative" of Concord.  (Doc. 154 at 12.)  Further, Plaintiffs contend Concord granted "underwriting authority to Finn & Stone allowing Finn & Stone to bind and sell Concord policies . . . ."  (*Id.*)  This information demonstrates Concord's and Finn & Stone's belief that Finn & Stone was the insurance agent that handled the policy at issue.  It does not stand for Plaintiffs' assertion that Finn & Stone had an agency relationship with Concord.  As such, Plaintiff has not provided sufficient evidence to establish an agency relationship between Finn & Stone and Concord.

Since the court determines Finn & Stone was not acting as an agent, nor was there a duty on Concord to determine the replacement cost of the home, the court does not need to determine whether "full coverage" was an implied term in the contract at this stage.

Plaintiffs' motion for partial summary judgment as to Count I is DENIED because they have failed to establish that Concord breached the contract.

21

### 4. Concord Did Not Breach the Contract

Concord moves for summary judgment on the basis Plaintiffs have failed to establish breach of the contract. Concord argues there is no implied term in the contract requiring them to reappraise the Ludlow House and that the the Shulmans accepted the offer limiting the policy because they paid the premium on the policy. (Doc. 143-1 at 9.)

As previously established, the contract did not include an implied term to appraise or reappraise the home. The court now turns to whether Concord breached the contract. Based on the undisputed evidence, the court finds that Concord fulfilled its obligation to pay under the contract and that no breach of the contract occurred as a matter of law. Defendant Concord's motion for summary judgment as to Count I is GRANTED.

### C. Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs argue Concord breached the implied covenant of good faith and fair dealing when it failed to inform Plaintiffs about their $3 million underwriting "cap" on Coverage A limits. (Doc. 142-2 at 24.) Plaintiffs allege that, when Concord renewed and increased the coverage of the Ludlow House to $3 million in 2020 and renewed the coverage at $3 million again in 2021, they failed to notify the Shulmans of the cap on the policy limits. This omission, Plaintiffs argue, caused the Shulmans to think their home was fully covered, and in turn they did not seek insurance elsewhere. Furthermore, Plaintiffs allege Concord failed to act diligently to determine the true rebuild cost of the Ludlow House. Concord argues Count II fails because Plaintiffs have already pleaded breach of contract claims arising from the same conduct as the breach of the implied covenant of good faith and fair dealing claim. Furthermore, Defendant Concord argues the implied covenant of good faith and fair dealing cannot create a duty to inspect where there is none.

The Vermont Supreme Court has opined that the implied covenant of good faith and fair dealing "protects against 'a variety of types of conduct characterized as involving "bad faith"

22

because they violate community standards of decency, fairness or reasonableness.'" *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 635 A.2d 1211, 1216 (Vt. 1993) (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)). Relying on the Restatement, the Vermont Supreme Court explained that it could not catalogue all possible claims, but noted claims that would fall within the ambit of "bad faith," such as "evasion of the spirit of the bargain," "lack of diligence and slacking off," "abuse of a power to specify terms," and "[s]ubterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified." *Id.* at 1217 (quoting Restatement (Second) of Contracts § 205 cmts. d, e). The Court further elaborated that "good faith is ordinarily a question of fact, one particularly well-suited for juries to decide." *Id.*

The Vermont Supreme Court upheld a lower court's finding that a landlord had breached the implied covenant of good faith and fair dealing where the "landlord continually rebuffed [the] tenant's attempts to meet and discuss plans" to renovate a space "even though [the] landlord knew that [the] tenant leased the space for the sole purpose of using it to expand the grocery store," rendering the space "essentially unusable except in a very limited way . . . ." *Century Partners, LP v. Lesser Goldsmith Enters., Ltd.*, 2008 VT 40, ¶ 27, 184 Vt. 215, 227, 958 A.2d 627, 635.

The Vermont Supreme Court also upheld a jury verdict finding a mortgage lender had acted in bad faith when it failed to pay the mortgagee's agreed-upon flood insurance premiums. *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶¶ 5–15, 179 Vt. 167, 893 A.2d 298. The property had been damaged by a flood, and the mortgagor's blanket insurance provided coverage but at less than the policy limit. *Id.* The court noted that, when the mortgagor was "presented with a choice between taking an adversarial posture toward its customer and taking on the role of its customer's advocate, or, at the very least, acting as an intermediary [between the mortgagor's blanket insurance

23

administrator and the mortgagee], GMAC chose to be adversarial without independently investigating the facts." *Id.* ¶ 41, 179 Vt. 167, 893 A.2d 298. The court noted the mortgagor could have sought to remedy its own breach but did not. *Id.* ¶ 43, 179 Vt. 167, 893 A.2d 298. The mortgagor's actions to "move[] ahead with foreclosure proceedings" against the mortgagee when it "was aware that the foreclosure filing would have an adverse impact on plaintiffs' credit rating, hurting their ability to secure future loans" supported the inference that the mortgagor filed a foreclosure action in retaliation for plaintiffs' refusal to accept the initial low offer to settle their insurance claim." *Id.* ¶ 44, 179 Vt. 167, 893 A.2d 298.

A claim for a breach of the implied covenant of good faith and fair dealing is not limited to the explicit terms of a contract. Indeed, the covenant ensures that parties "act with 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Century Partners, LP*, 2008 VT 40 ¶ 21, 184 Vt. 215, 958 A.2d 627. Courts interpret terms in a contract by examining the plain meaning of the contract without resorting to extrinsic evidence. *Harsch Props., Inc. v. Nicholas*, 2007 VT 70, ¶ 12, 182 Vt. 196, 932 A.2d 1045.

As previously established, Concord did not have a duty to appraise or reappraise the home under the express terms of the policy, but the allegation is one of bad faith. Plaintiffs allege that Concord's failure to identify the $3 million underwriting cap when the coverage did not increase for policy year starting February 15, 2020, despite having increased the limit during the previous years when the cap had not been met, violates the covenant of good faith and fair dealing. Whether this allegation is one of bad faith should be decided by a jury.

This dispute is one of material fact and the court cannot weigh which party's assertion is correct as a matter of law. Furthermore, the determination of this claim is one of fact and is better

24

suited for a jury. The court denies both Plaintiffs' and Concord's motion for partial summary judgment as to Count II.

### D. Count III – Reformation of Contract and Count IV – Breach of Reformed Contract

Concord moves for summary judgment as to Count III, because Plaintiffs are unable to establish there was a mutual mistake that would support reformation of their contract. According to Concord, the Shulmans would need to prove that the intent of the parties was to insure the Ludlow House for the full replacement value of $6.75 million. (Doc. 143-1 at 15–16.) Concord argues this cannot be established as the parties never intended to write a policy beyond a $3 million Coverage A limit. (*Id.* at 17.) Concord additionally claims they made no mistake in the valuation of the Ludlow House because they did not perform the inspection. (*Id.* at 16.)

Plaintiffs argue summary judgment is not appropriate and this claim should be decided by a jury because sufficient evidence exists to demonstrate a mutual mistake. Specifically, Plaintiffs assert they sought an insurance policy that reflected their wish to be fully covered in the event the Ludlow House was damaged or destroyed. (Doc. 145 at 25-26.) According to Plaintiffs, Concord's intent to enter into a contract to provide coverage for a full rebuild of the Ludlow House is evident based on their decision to obtain an appraisal from JMI to determine the full replacement value of the Ludlow House before finalizing the contract. Plaintiffs argue this evidence reflects a mutual intent of the parties, which was not reflected in the written policy only due to JMI's mistaken calculation of the full replacement value. (*Id.*) As such, Plaintiffs request this court to reform the contract.

Under Vermont law, "the party seeking reformation [has] the duty of establishing, beyond a reasonable doubt, the true agreement to which the contract in question is to be reformed."

*Travelers Ins. Co. v. Bailey*, 197 A.2d 813, 815 (Vt. 1964) (citing *deNeergaard v. Dillingham*, 187 A.2d 494 (Vt. 1963)). The Vermont Supreme Court concluded:

> Reformation is appropriate, when an agreement has been made, or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction in writing, either through the mistake common to both parties, or through the mistake of the plaintiff accompanied by the fraudulent knowledge and procurement of the defendant, the written instrument fails to express the real agreement or transaction.

*Bourne v. Lajoie*, 540 A.2d 359, 361–62 (Vt. 1987) (quoting *LaRock v. Hill*, 310 A.2d 124, 126 (Vt. 1973)). The type of mistake which warrants reformation of the contract "is an unintentional act or omission arising from ignorance, surprise, imposition or misplaced confidence, and it exists when a person under some erroneous conviction of law or fact does or omits to do some act which, but for the erroneous conviction, he would not have done or omitted." *United States v. Peryea*, No. 1:03cv69, 2006 WL 1660760, at \*3 (D. Vt. June 7, 2006) (quoting *Burlington Sav. Bank v. Rafoul*, 209 A.2d 738, 740 (Vt. 1965)).

The purpose of reformation is "to correct mutual mistakes of the parties that have created a result neither party intended." *Cassani v. Northfield Sav. Bank*, 2005 VT 127, ¶ 15, 179 Vt. 204, 893 A.2d 325 (citing *Burlington Sav. Bank*, 209 A.2d at 741). A court, at the request of a party, may reform the writing of a contract to express an agreement to correct an unintentional mistake. Restatement (Second) of Contracts § 155 (1981).

Vermont law, like that of many jurisdictions, imposes upon the party seeking reformation the duty of establishing beyond a reasonable doubt, the true agreement to which the contract in question is to be reformed. *Burlington Sav. Bank*, 209 A.2d at 740 (citing *Travelers Ins. Co.*, 197 A.2d at 815). Put another way, Plaintiffs have "the burden of establishing that there existed, previous to the [contract], a valid agreement representing a standard to which the erroneous writing can be reformed, so as to express the true transaction between the parties." *LaRock*, 310 A.2d at

26

126 (1973). There must be evidence from which the intent and terms of the true agreement can be found. *See Travelers Ins. Co.*, 197 A.2d at 815.

Concord's argument misconstrues Plaintiffs' position as to what they believe was the mutual intent of the parties in entering into this policy. It is not that the parties specifically agreed to write a policy that was for $6.25 million. The court agrees this would never have been the intent of Concord given that their asserted underwriting cap was $3 million. Rather than inclusion of a specific amount in the contract, Plaintiffs argue the mutual intent was to allow them to have the Ludlow House completely rebuilt following a catastrophic loss, such as fire.

This argument, however, also fails. The only evidence offered by Plaintiffs to support a finding that Concord intended to enter into a homeowners policy that would allow the Shulmans to completely rebuild the Ludlow House is the fact that they sought and obtained an appraisal to estimate the full replacement value. This alone does not establish beyond a reasonable doubt that Concord's intent was to ensure "full coverage." This step could simply reflect an intent to be sure the estimated replacement value was below $3 million.

The party moving for reformation of a contract bears a heavy burden in presenting evidence to establish beyond a reasonable doubt the specific contractual agreement between the parties. In *Gould's Est. v. McIntyre*, 237 A.2d 125 (Vt. 1967), the Vermont Supreme Court considered whether to reform a deed based on mutual mistake in the description of the conveyed land. *Id.* at 126. The deed conveyed a parcel of land which included, not only the land in controversy, but also additional land that would deprive the plaintiffs of ingress and egress to a particular road. *Id.* In upholding the reformed deed, the Court noted that all of the credible evidence, including correspondence from the defendants to the plaintiff leading up to the sale, documented the agreement of the parties, before the execution of the deed to convey a smaller piece of property for a specified amount of

27

money. *Id.* at 127–28. The Court noted, "[n]o contrary evidence appears in the record." *Id.* at 128. The Court was able to identify the "specific contractual agreement between the parties, and a subsequent erroneous rendition of the terms of the agreement." *Id.*

Similar circumstances were present in *Traveler's Insurance*. In that case, the terms requested in an application for life insurance were incorrectly inserted into the policy, resulting in significantly higher payments for a longer period of time. *Travelers Ins. Co.*, 197 A.2d at 814–15. Based on the original request for life insurance, the amount of the premiums, and the fact that the insurance company did not have a rate for nor sold a policy with the payments sought by the plaintiff, the court concluded that "[T]he only agreement that the plaintiff and defendant made was for $5000 insurance with annuity of $500 per year at attained age 65, ten years certain." *Id.* at 815.

Here, the court recognizes it is not considering this case following a trial as occurred in *Travelers Insurance* and *Estate of Gould*. Despite that, however, the court finds that the evidence relied upon by Plaintiffs to establish mutual mistake are insufficient as a matter of law to support reformation of the contract. It appears Plaintiffs want the court to find that the "specific contractual agreement" entered into by the parties was a contract for "full replacement coverage." The court cannot find this is a viable contractual term in the context of homeowners insurance. There would be no agreement as to the amount to be paid. This certain amount is the critical question in a homeowners insurance policy. Additionally, unlike *Travelers Insurance*, Plaintiffs cannot point to a specific premium that they had agreed to pay in exchange for a contract that provided "full replacement coverage." From this evidence, the court cannot articulate the "specific contractual agreement" that Plaintiffs claim existed prior to the writing of the contract.

Because the court concludes Plaintiffs' evidence is insufficient to support a claim for reformation of a contract, the court GRANTS Concord's motion for summary judgment as to Counts III and IV.

## ORDER

The court GRANTS Finn & Stone's Motion for Summary Judgment and DENIES Plaintiffs' Motion for Partial Summary Judgment as to Count I. (Doc. 139; Doc. 142). The court GRANTS Concord's Motion for Summary Judgment as to Counts I, III and IV; DENIES Concord's Motion for Summary Judgment as to Count II; and DENIES Plaintiffs' Motion for Partial Summary Judgment as to Defendant Concord. (Doc. 142; Doc. 143).

SO ORDERED at Rutland, Vermont, this 26th day of March 2026.

Mary Kay Lanthier
United States District Court Judge

29